THOMAS W. HARPER *v.* L. O. WILKINGS.

VENDOR'S LIEN.    *Vendor and holder of note for purchase money rescinding sale.*
    *Purchase of superior title by vendee.    Case in judgment.*

  H. bought land from W., and executed his note in payment therefor. W. transferred the note to L.    Afterwards the title to the land was found to be in one B.    L. and W. then consented to the sale from W. to H. being considered as rescinded and that H. might buy the land from B.    H. accordingly bought the land from B.    Five years afterwards L. sought to enforce a vendor's lien on this land to compel payment of the note. *Held,* that the lien which L. attempts to assert does not exist.    No lien resulted from the transaction between W. and H., because no title was conferred; and the consent of W. and L. to the rescision of the trade between W. and H., and the purchase by the latter from B. precludes the assertion of a claim that H. was disabled from buying the superior title of B.

APPEAL from the Chancery Court of Grenada County.

HON. J. G. HALL, Chancellor.

In 1879, J. G. Wright executed a deed of trust on certain land for the benefit of Lake Bros.    This deed was duly recorded. In February, 1881, Thos. W. Harper purchased this land from Wright upon the latter's assurance that it was unincumbered, and the former executed his three promissory notes payable in one, two, and three years, respectively, in payment therefor.    In April, 1882, Wright transferred the first two of the above mentioned notes to Mrs. L. O. Wilkings in satisfaction of a certain

debt due by him to her, or as collateral security therefor. In October, 1882, the land was sold under and by virtue of the deed of trust above referred to and purchased by Lake Bros. It appears that Harper for the first time learned of this deed of trust a few days before the sale; that he thereupon consulted his lawyer and also J. A. Wilkings, husband and agent of Mrs. L. O. Wilkings, about what was best to be done under the circumstances. Harper testified in this suit that Wilkings advised, and assented to his purchase of the land from Lake Bros., and promised to surrender to Harper the notes held for his wife; and that he, therefore, did purchase the land from Lake Bros., paying $275 cash for the same.

The testimony of Wilkings on this point is as follows: " Mr. Harper came to me relative to the notes; but at what time I can't say. He asked me for the notes, and I declined giving them to him because, if I had to go back on Wright, I wanted to show how the whole transaction was. I then regarded the notes as worthless and only held them to evidence the transaction I had had with Wright, intending to make my wife's money out of Wright, if I could." The witness further testified that he had repeatedly tried to collect the notes from Wright; that he had not regarded Harper as liable thereon after learning of the deed of trust held by Lake Bros., until a short time before the institution of this suit, when he was informed by his counsel that in his opinion the land was liable for the notes.

In Feb., 1887, Mrs. L. O. Wilkings filed this bill·in equity against Harper, seeking to enforce a vendor's lien on the land on the ground that the notes were given for the purchase money thereof.

The chancellor sustained the bill so far as to decree the land subject to the payment of the one of the two notes held by complainant, which became due after it came into her hands. The defendant appealed.

B. C. Adams, for the appellant.

It would be a fraud in Wilkings to assert a right in these notes when his previous conduct and words had denied that he had any, since Harper acted on the faith of that denial. Certainly the conduct and language of Wilkings in this matter will

operate as an estoppel. Estoppel by conduct arises from an act or declaration of a person intended or calculated to mislead another, on which that other has relied and has so acted, or refrained from action, as that injury will befall him if the truth of the act or declaration be denied. See *Staton* v. *Bryant*, 55 Miss., page 272; citing *McMaster* v. *Insurance Co.*, 55 New York, page 222.

Was not Wilkings' conduct and language calculated to mislead?

But counsel for appellee says Wilkings was mistaken as to his legal rights. Mistake as to his legal rights is no excuse. If a party *misleads innocently*, when two innocent persons suffer he shall suffer, who by his own acts occasioned the confidence and the loss. See Story's Equity Jurisprudence, page 374, sec. 387; Bigelow on Estoppel (2d edition), page 532. Harper relied on Wilkings' statement and acted on his advice.

*W. C. McLean*, on the same side.

We contend that complainant by reason of the representation and conduct of her agent and manager is estopped from asserting any lien upon the land.

It is settled that no actual fraud, no wilful deception, is an essential element in equitable estoppel. Pomeroy's Equity, Sec. 802-3.

Harper, by the conduct of complainant, was induced to buy in the outstanding and superior title of Lake Bros.; in order to do so he paid out his money; by obtaining the title of Lake Bros., he infused life and vitality into the otherwise dead and lifeless lien of complainant, or rather, we should say, Harper, by purchasing the title of Lake Bros., *created* (because before then, complainant in truth and in fact had no claim upon the land that was *available to her*) a lien in favor of complainant upon the land, if it be, that she can now subject the land to the payment of the debt. Complainant by her conduct had Harper to "change his position," and this change of position is an injury, if it altered the *legal position* of the parties. Pomeroy's Eq., Sec. 812. In *Gross* v. *McKee*, 53 Miss., p. 536, this Court held that fraudulently obtaining a lien for the payment of an honest debt is not *Damnum ab sque injuria*, but an injury, and the enforcement of it a greater injury.

The principle for which we contend was enforced and is illustrated in *Faxton* v. *Faxon*, 28 Mich., p 159.

*W. H. Fitzgerald*, for the appellee.

The complainant is not estopped from enforcing the lien of the notes on the land even if it were true that Harper would not have bought the land from Lake Bros., but for the alleged conduct and advice of complainant's agent.

His condition was not changed for the worse, and if he bought upon the representations and in consequence of the conduct and advice of Wilkings, there is wanting an essential element of estoppel. 2 Pomeroy, Eq. Jur. § 805. Harper does not claim that complainant, through her agent, promised to give him, as a gracious gift, the debt evidenced by the notes, and upon the faith of the promise that he bought the land; and after he did so, that complainant failed to make the promise good, and that by reason thereof, he is about to be forced to pay the debt. His counsel would not seek to predicate estoppel on a statement of facts so manifestly against their client as that. And yet what does he claim? That Wilkings regarded the notes as worthless; that Wilkings had gone to his lawyer and was advised by him that the notes were worthless; that Wilkings did not object to his purchasing the land, but permitted him to go ahead and complete the trade without further claim to or in the land on his part. That is about the sum and substance he says.

CAMPBELL, J., delivered the opinion of the Court.

Under the circumstances of this case, as testified to by Wilkings, there was no lien on the land. The principle on which the vendor's lien exists is that the purchaser of land shall not keep what he got by the purchase without paying for it. But Harper got nothing by his purchase from Wright, to whom he gave the notes sued on. He acquired the land by subsequent purchase from Lake Bros., who had the paramount title. There was no lien by virtue of the transaction with Wright because there was no title conferred, and his subsequent acquisition of title is not to be treated as a buying in and perfecting the title, as in the ordinary case of a vendee purchasing an outstanding title, because Wright, the vendor, and Wilkings, the holder of the

notes consented to the sale by Wright to Harper being considered as rescinded and to his purchase of the land from Lake Bros., and this precludes the assertion of a claim that he was disabled from buying the title which they had. Harper holds not by virtue of his purchase from Wright, but by an independent title obtained from another source. As to that there was no lien.

There are other views of this case which seem to us decisive of it in favor of the appellant, but the above one disposes of it.

*Decree reversed and bill dismissed at the costs of the appellee in both courts.*